UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AKIL FOLBORG,

                          Plaintiff,

            -against-

LIEUTENANT BLOT, et al.,

                          Defendants.

**OPINION & ORDER**

24-CV-08913 (PMH)

Philip M. Halpern, United States District Judge:

Akil Folborg ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Lieutenant Blot, Sergeant Alexander Schmitt, and Correction Officer Lewis Boyd ("Defendants"),[1] in both their individual and official capacities, alleging violations of his constitutional rights while he was incarcerated at Green Haven Correctional Facility. (Doc. 1, "Compl.").[2] Namely, Plaintiff alleges that Defendants violated his Eighth Amendment rights by: (1) using excessive force in their deployment of a chemical agent against another inmate, injuring Plaintiff in the process; and (2) failing to take adequate measures to protect Plaintiff from said chemical agent, in deliberate indifference to Plaintiff's conditions of confinement. (*Id.* ¶¶ 20-22). Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] The Court, on January 21, 2025, issued an order which, *inter alia*, directed the New York State Attorney General to identify the John Doe Correction Officer and John Doe Sergeant named in the Complaint. (Doc. 8). On May 2, 2025, in light of the New York State Attorney General's response to the Court's order (Doc. 14), the Court deemed Plaintiff's Complaint amended to identify Correction Officer Lewis Boyd and Sergeant Alexander Schmitt as the John Doe Correction Officer and John Doe Sergeant, respectively. (Doc. 15).

[2] Citations to specific pages of the Complaint and other filings on the docket correspond to the pagination generated by ECF.

1

For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

**BACKGROUND**

Plaintiff, in his Complaint, alleges that he was secondarily exposed to a chemical agent while Defendants were conducting a cell extraction of an unidentified inmate at Green Haven Correctional Facility.[3] The cell extraction occurred on November 9, 2021. (Compl. ¶ 10). The extraction team consisted of Defendants and several other prison officers. (*Id.*). The extraction team, equipped with gas masks, video cameras, and other equipment, proceeded to the unidentified inmate's cell where Defendants sprayed "multiple bursts of a very powerful and potent chemical agent into the cell block atmosphere" before entering and removing the inmate from his cell. (*Id.*). Defendant Blot authorized the use of the chemical spray. (*Id.* ¶¶ 4, 20). Both Defendants Boyd and Schmitt used the chemical spray. (*Id.* ¶ 21; Doc. 26, "Pl. Br." at 5).

The extraction was an effort allegedly to recover the unidentified inmate's radio. Plaintiff alleges that the inmate "rightfully owned" this radio and that the extraction occurred only because Defendant Blot "wanted the prisoner's radio," and the prisoner refused to surrender it. (Compl ¶ 10; Pl. Br. at 3-4). Plaintiff further alleges that the targeted inmate was "noncombative" and "unthreatening"; and that the inmate was not "a threat to himself, officers or other prisoners." (Pl. Br. at 4-5).

---

[3] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *See Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014). Accordingly, the Court considers on this motion the additional allegations contained in Plaintiff's opposition brief. (Doc. 26). The Court does not, however, consider the additional documents attached to Plaintiff's opposition as they are not referred to in the complaint, "integral" to the complaint, or otherwise helpful in deciding the present motion. *See Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) ("[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.").

According to Plaintiff, exposure to this chemical agent has caused him to suffer various ailments. During the extraction, the windows in the cell block where both Plaintiff and the targeted inmate were held were closed and there were no fans or ventilation to mitigate the effects of said chemical agent. (Compl. ¶ 11). Plaintiff suffered a burning sensation in his eyes and nose, was coughing "so violently" that he "broke out in sweats," "experienced painful muscle spasms in and around [his] neck," and had extreme difficulty breathing. (*Id.* ¶¶ 11-13). Plaintiff, in an attempt to protect himself, wrapped himself in his bedding, to no avail. (*Id.* ¶ 14). Plaintiff, and others in his cell block, cried out for help, but their cries went unanswered. (Pl. Br. at 10). After ten to thirty minutes of Plaintiff being exposed to the chemical agent, correction officers arrived and opened the windows in Plaintiff's cell block. (Compl. ¶ 14). Plaintiff, in the aftermath, still suffered symptoms, including an "extremely sore" throat, panic attacks, sleeplessness, and "severe headaches." (*Id.* ¶¶ 15-16). Plaintiff was not seen by any medical staff until the following day, when he sought eye drops and medicine for his headaches, as well as mental health treatment. (*Id.* ¶¶ 15, 17). Since his exposure to the chemical agent, Plaintiff continues to utilize eye drops to remedy blurry vision and "mild burning sensations" in his eyes, and he suffers from headaches and sleeplessness. (*Id.* ¶ 18).

## **LEGAL STANDARD**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "'however inartfully ple[d],' must be held to 'less stringent standards than formal pleadings drafted by lawyers' . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 371 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intel. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718,

2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff asserts Eighth Amendment claims against Defendants for: (1) excessive force; and (2) deliberate indifference.[4] Defendants also assert an affirmative defense of qualified immunity based upon the allegations in the Complaint.

Plaintiff's claims for relief are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under §

---

[4] Plaintiff, in his opposition, asserts for the first time a claim for failure to intervene. (Doc. 26 at 8). The Court will not consider a claim that is mentioned for the first time in an opposition brief. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to consider claim that "did not enter the case until [plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss.").

1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id.* "The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I.        Plaintiff's First Claim: Excessive Force

Plaintiff's first claim for relief is for excessive force against all Defendants. To state a claim for excessive force against a prison official under the Eighth Amendment, a plaintiff must plead that: (1) "objectively, the alleged punishment was sufficiently serious"; and (2) "subjectively, the prison official had a sufficiently culpable state of mind." *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (citation modified), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019)). These two elements are referred to as the objective and subjective prongs, respectively.

"The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The objective prong requires, in the abstract, "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The subjective prong, on the other hand, requires a "showing that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is whether the force was used in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm." *Fabricio v. Annuci*, 790 F. App'x 308, 310 (2d Cir. 2019) (quoting *Harris*, 818 F.3d at 63).

Of course, in evaluating an excessive force claim, courts must also bear in mind that "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (internal quotation marks omitted). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, a plaintiff need not demonstrate significant injury because, in those circumstances, contemporary standards of decency always are violated. Thus, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se*." *Greenburger v. Roundtree*, No. 17-CV-03295, 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020) (internal quotation marks omitted), *adopted by* 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); *see also Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excess force was weak."); *White v. Marinelli*, No. 17-CV-01094, 2019 WL 1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("[P]hysical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment.").

Defendants do not argue that Plaintiff fails to satisfy the objective prong of the excessive force analysis but instead argue that Plaintiff does not plead sufficient facts to satisfy the subjective prong. (Doc. 25, "Def. Br." at 5). Defendants, in support of this argument, cite cases which held

that second-hand exposure to a chemical agent does not give rise to a constitutional claim. (*See id.*). The cases cited by Defendants, however, do not state that secondhand exposure to a chemical agent can *never* give rise to an excessive force claim. *See Ransom v. Banks*, No. 20-CV-10232, 2022 WL 769344, at *4 (S.D.N.Y. Mar. 14, 2022) ("Courts in this District have repeatedly found that the secondhand inhalation of pepper spray does not *typically* give rise to a constitutional claim." (emphasis added)); *Cruz-Droz v. Marquis*, No. 17-CV-01291, 2018 WL 1368907, at *3 (D. Conn. Mar. 16, 2018) ("[E]xposure of non-disruptive inmates to a chemical agent is not cognizable under section 1983" where "[t]here are no facts suggesting that" the chemical agent was deployed "in bad faith."); *Perez v. City of New York*, No. 17-CV-00366, 2017 WL 684186, at *3 (E.D.N.Y. Feb. 21, 2017) (dismissing excessive force claim premised on secondhand exposure to a chemical agent where the plaintiff "fail[ed] to allege any facts supporting that the prison officials sprayed" a chemical agent "to 'maliciously' cause harm").

Plaintiff argues that there is no "categorical rule" that secondhand exposure to chemical spray cannot form the basis of an excessive force claim. (Doc. 26 at 5). The cases cited by Plaintiff hold that an Eighth Amendment excessive force claim may be "based on a transferred intent theory." *Rodriguez v. City of New York*, No. 14-CV-08647, 2016 WL 11483837, at *5 (S.D.N.Y. Aug. 2, 2016), *adopted by* 2016 WL 5476003 (S.D.N.Y. Sep. 29, 2016); *see also Hodge v. City of New York*, No. 19-CV-02474, 2019 WL 1455170, at *2 n.2 (S.D.N.Y. Apr. 1, 2019) ("A prisoner may be able to state an excessive force claim if he is injured by officers who are using force against another inmate."). The Court agrees.

"[W]hen a correctional official intentionally and wantonly uses force without justification against one inmate, and thereby creates a substantial risk of harm and actual injury to other inmates, it cannot be the case that she is free of constitutional liability to the inmates she injures just because

8

they were not her intended targets." *Santos v. New York City Dep't of Corrs.*, No. 08-CV-08790, 2010 WL 1142066, at *9 (S.D.N.Y. Feb. 25, 2010), *adopted by* 2010 WL 1142065 (S.D.N.Y. Mar. 25, 2010); *see also Garcia v. Anderson*, No. 21-CV-00814, 2023 WL 10365100, at *11 (N.D.N.Y. Nov. 13, 2023), *adopted by* 2024 WL 446030 (N.D.N.Y. Feb. 6, 2024) ("Courts have held that an excessive force claim may lie where the plaintiff was not the force's intended object."). Thus, Plaintiff's excessive force claim does not fail simply because he was not the intended target of Defendants' use of force.

Defendants, alternatively, argue that their use of force against the target inmate was not excessive. Defendants argue that Plaintiff does not sufficiently allege that their use of a chemical agent was done "maliciously and sadistically to cause harm," rather than in a "good-faith effort to maintain or restore discipline." (Def. Br. at 6 (quoting *Wright*, 554 F.3d at 268)). Defendants contend that, because the inmate refused to give his radio to Defendant Blot and the deployment of the chemical agent was part of a cell extraction, that inmate was "non-compliant," and Defendants' use of force was *ipso facto* justified. (*Id.*). Plaintiff, for his part, alleges that the extraction was to recover an inmate's "rightfully owned radio" simply because Defendant Blot "wanted that prisoner's radio" and further that this inmate was "noncombative" and "unthreatening." (Compl ¶ 10; Doc. 26 at 4). While Plaintiff's claim is perhaps "[i]nartfully pled," Plaintiff has sufficiently pled the subjective prong of his excessive force claim. *Estelle*, 429 U.S. at 106. As alleged by Plaintiff, there was no discipline to "maintain or restore" and Defendants deployed the chemical agent "maliciously and sadistically." *Fabricio*, 790 F. App'x at 310 (quoting *Harris*, 818 F.3d at 63); *accord Parsons v. City of New York*, No. 17-CV-02707, 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017) ("Courts in this Circuit have repeatedly held that a prison official's use of mace or chemical spray against a compliant prisoner satisfies both the subjective and

objective elements of an Eighth Amendment excessive force claim . . . ."); *West v. City of New York*, No. 13-CV-05155, 2014 WL 4290813, at *4 (S.D.N.Y. Aug. 28, 2014) ("[T]he assault, as alleged, lacked any legitimate purpose. Even if [plaintiff] disobeyed [defendant's] orders, the use of the artillery of mace, on the facts pled, was unnecessary to restore discipline.").

Accordingly, Defendants' motion to dismiss is denied as to Plaintiff's excessive force claim.

II.      Plaintiff's Second Claim: Deliberate Indifference

To state a claim for deliberate indifference to conditions of confinement under the Eighth Amendment, Plaintiff must plead: (1) conditions that "pose an unreasonable risk of serious damage to his health"; and (2) that prison officials "kn[ew] of, and disregard[ed], an excessive risk to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Like the elements of an excessive force claim, the two elements of a deliberate indifference claim are referred to as the objective and subjective prongs, respectively.

The objective prong requires that "challenged conditions [be] sufficiently serious to constitute objective deprivations of the right to due process . . . ." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* at 30 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). In evaluating the objective prong, courts consider whether an inmate "has been subjected to 'an unreasonable risk' of serious harm to his or her future health." *El-Massri v. Marmora*, No. 18-CV-01249, 2022 WL 6170681, at *15 (D. Conn. Oct. 7, 2022) (quoting *Darnell*, 849 F.3d at 15). The subjective prong, on the other hand, requires "more than mere negligence." *Walker*, 717 F.3d at 125 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Evidence that a risk was 'obvious or otherwise

must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Id.* (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)). However, the subjective element still "requires that the inmate allege that the defendants acted with the 'mental state equivalent to subjective recklessness as that term is used in criminal law.'" *Deegan v. Doe*, No. 19-CV-01356, 2019 WL 5964816, at *4 (D. Conn. Nov. 13, 2019) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)).

Plaintiff's allegations, construed liberally, may satisfy the objective prong. *See, e.g.*, *El-Massri v. New Haven Corr. Ctr.*, No. 18-CV-01249, 2018 WL 4604308, at *8 (D. Conn. Sept. 25, 2018) (finding that the plaintiff sufficiently alleged the objective element of a deliberate indifference claim where the defendants "den[ied] him from washing a harmful, burning chemical from his skin and eyes . . . ."). Regardless, Plaintiff's deliberate indifference claim fails the subjective prong. Plaintiff alleges that, during the extraction, Defendants failed to take proper measures to protect inmates in the cell block, including himself, who were not the target of the chemical spray. (Compl. ¶ 22). Plaintiff further alleges, in his opposition, that he and other inmates yelled for help, but no assistance was given. (Pl. Br. at 5). Plaintiff does not, however, allege that Defendants knew or were otherwise aware that Plaintiff would be injured by the chemical agent, nor does Plaintiff allege that Defendants heard Plaintiff's pleas for assistance. Plaintiff argues that Defendants "should have known" that deploying the chemical agent would be detrimental to his health. (Doc. 26 at 10). That Defendants "should have known" of the risk of harm to Plaintiff may be sufficient to state a claim under the Fourteenth Amendment deliberate indifference standard, but it is not sufficient to state a claim under the Eighth Amendment deliberate indifference standard. *See, e.g.*, *Booker v. Suffolk Cnty. Dep't of Corr.*, No. 23-CV-07732, 2023 WL 7663288, at *4 (E.D.N.Y. Nov. 15, 2023) ("Under the Fourteenth Amendment, a plaintiff must allege that . .

11

. the defendant knew or should have known that an excessive risk to health or safety would result. In contrast, under the Eight Amendment . . . . A prison official does not act in a deliberately indifferent manner unless that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (citation modified)). Here, Plaintiff alleges facts establishing that Defendants could draw an inference that there was a risk of harm to Plaintiffs, but Plaintiff does not allege facts that show Defendants indeed drew such an inference or were otherwise aware of the risk of harm to Plaintiff.

Accordingly, Plaintiff's deliberate indifference claim is dismissed because the subjective element under the Eighth Amendment has not been pled.[5]

III.     Official Capacity Claims

Plaintiff asserts his claims against Defendants both in their "individual and official capacities." (Compl. at 1). To the extent Plaintiff presses claims against Defendants in their official capacities, those claims must be dismissed by operation of the Eleventh Amendment.

The Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state, or against a state employee acting in his or her official capacity, by one of its own citizens. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v.*

---

[5] To the extent Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs, Plaintiff's claim similarly fails the subjective prong. *See Reberio v. Guadarrama*, No. 23-CV-00238, 2023 WL 4684851, at *3 (D. Conn. July 21, 2023) ("[T]o state an Eighth Amendment claim of deliberate indifference to either a medical need or a condition of confinement, a plaintiff must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness.").

*Louisiana*, 134 U.S. 1, 15 (1890)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office . . . . As such, it is no different from a suit against a State itself.").

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at \*2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gallomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)) (alteration in original). Furthermore, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at \*3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)).

Because the Eleventh Amendment deprives this Court of subject-matter jurisdiction and neither exception applies, Plaintiff's claims for relief are dismissed to the extent they seek relief against Defendants in their official capacities. This result does not affect the claims against Defendants in their individual capacities.

IV.   Qualified Immunity

Defendants argue that Plaintiff's claims are barred by the doctrine of qualified immunity. (Def. Br. at 8-10). While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). A 12(b)(6) motion based on qualified immunity may be granted if "the facts supporting the defense appear on the face of

the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d at 435-36). A defendant bears the burden of establishing that he is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent*, 718 F.3d at 166). Consequently, when a defendant raises a qualified immunity defense in a 12(b)(6) motion to dismiss, the defendant must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 F. App'x at 42 (quoting *McKenna*, 386 F.3d at 436). Thus, "[a]t the motion to dismiss stage, the qualified immunity defense 'faces a formidable hurdle . . . and is usually not successful' because it is the *defendant* that must plead and prove the defense." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (second alteration in original) (quoting *Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020)).

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's actions did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). "A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his or her action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013).

Here, the Court has already found that Plaintiff alleges a viable claim for excessive force under the Eighth Amendment. Plaintiff's rights were clearly established as "[i]t is indisputable that freedom from the use of excessive force is a clearly established constitutional right." *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005). Furthermore, "a determination of whether the right at issue was 'clearly established' 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Defendants, therefore, would have to demonstrate in the context of this case that their actions were objectively reasonable. Plaintiff alleges that Defendants sprayed another inmate who was no threat to others with a chemical agent, injuring Plaintiff in the process. "Defendants' use of the chemical or pepper spray in the circumstances described in the complaint[] would run counter to clearly established Second Circuit law requiring that such substances 'not be used lightly or gratuitously' by police and corrections officers." *Rodriguez v. City of New York*, No. 14-CV-08647, 2016 WL 5476003, at *9 (S.D.N.Y. Sept. 29, 2016) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010)). Defendants do not, at this stage, meet the burden of demonstrating that their actions were objectively reasonable. Accordingly, Defendants' motion to dismiss on the basis of the affirmative defense of qualified immunity is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED as to Plaintiff's first claim for excessive force but GRANTED as to Plaintiff's second claim for deliberate indifference. Plaintiff's claims, to the extent they are brought against Defendants in their official capacities, are likewise dismissed.

15

Defendants are directed to file an answer to the Complaint within 14 days of the date of this Order. The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 24.

**SO ORDERED.**

Dated:   White Plains, New York
      December 5, 2025

PHILIP M. HALPERN
United States District Judge